IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

FILED
1991 FEB -1 PM 4: 28
CLERK
U.S. DISTRICT COURT
NORTHERN DISTRICT
TOLEDO, OHIO

United States of America,

    Plaintiff                Case No. 3:89CR720

vs.

Steven Wayne Yee, et al.,

    Defendants             **MEMORANDUM AND ORDER**

POTTER, J.:

    This cause is before the Court on defendants' motion to exclude DNA evidence, the government's opposition and affidavit of counsel which, because of extenuating circumstances, was permitted by the Court to be faxed.

    Defendants argue for an order excluding at trial the results of the DNA testing undertaken by the F.B.I. laboratory or, in the alternative, for an in limine hearing. Defendants assert that, because of serious defects with respect to the F.B.I.'s methods for declaring matches and calculating probabilities, the dangers of unfair prejudice and confusion would outweigh the probative value of the evidence. Defendants argue that, in any event, the test should be excluded under Fed. R. Evid. 403. Finally, defendants assert that the F.B.I.'s methods are not reliable to declare a match. The motion is supported by an affidavit of counsel.

    Defendants rely on the recent case of United States v. Matthew Sylvester Two Bulls, 918 F.2d 56 (8th Cir. 1990). It would appear that that case was strongly influenced by the case of People v. Castro, 545 NYS2d 985 (N.Y. App. Div. 1989). In the Two Bulls case, the court ruled that a "pre-trial hearing should be held to determine whether the laboratory used accepted techniques to yield results reliable enough to be admitted as a question of fact for the jury." Matthew Sylvester Two Bulls, 918 F.2d at 60.

AO 72A
(Rev. 8/82)

2

In Two Bulls the trial court determined, after hearing only "the testimony of the government's first witness" Matthew Sylvester Two Bulls, 918 F.2d at 57, that it had been sufficiently established that DNA evidence was generally accepted by the scientific community and that the DNA evidence offered in that case could be presented to the jury. In stark contrast, this Court conducted an admissibility hearing on the question of DNA, expressly limited by agreement of parties to issues pertaining to DNA theory and the general protocols of the FBI DNA profiling laboratory, that lasted the better part of six weeks. This Court's hearing, presided over by Magistrate Carr, entertained testimony from numerous experts for both the defense and the government. The government's experts and the experts for the defense were well recognized members of the scientific community, representing various areas of specialization within the field of genetics, and they presented assorted and divergent views on the several issues addressed by the Court.

Furthermore, and of more dispositive significance to the issue raised in the defendants' instant motion, is the position taken by the Eight Circuit Court of Appeals in Two Bulls on the question of the appropriate standard of review for addressing questions of admissibility of evidence derived from novel scientific methodologies. Relying, inter alia, on several Sixth Circuit cases, including United States v. Distler, 671 F.2d 954 (6th Cir.), cert. denied, 454 U.S. 827 (1981) and United States v. Franks, 511 F.2d 25 (6th Cir.), cert. denied, 422 U.S. 1042 (1975), the court stated:

> Regardless of which rule may be followed, we feel Rule 702 and Frye both require the same general approach to the admissibility of new scientific evidence. Neither rule should permit speculative and conjectural testing which fails normal foundational requirements necessary for the admissibility of scientific testimony or opinion.

3

Matthew Sylvester Two Bulls, 918 F.2d at 60. The court concluded, based on a rather cursory analysis of the proper standard of admissibility, that the novelty and potentially prejudicial impact of DNA evidence made it imperative that the trial court satisfy itself that there existed a "sufficient foundational basis as to the overall admissibility of the evidence." Id. The Eighth Circuit apparently uncovered the "sufficient foundational basis" by which it established the appropriate standard for addressing questions of admissibility of novel scientific evidence in the New York Supreme Court case of People v. Castro, 545 N.Y.S.2d 985 (N.Y. App. Div. 1989).

The Supreme Court of New York in Castro made its starting point for its analysis of the standard of admissibility of novel scientific evidence the seminal case of Frye v. United States, 293 F.2d 1013 (D.C.Cir. 1923). The court explicated the Frye standard, stating, "the test is not whether a particular procedure is unanimously endorsed by the scientific community, but whether it is generally acceptable as reliable." Id., 545 N.Y.S.2d at 986-87, quoting, People v. Middleton, 54 N.Y.2d 42, 49, 444 N.Y.S.2d 581, ___ (1981).

The Castro court determined that the question of the admissibility of DNA evidence required a three pronged analysis in which the court should undertake to determine whether: 1) the theory of DNA identification is generally accepted by the relevant scientific community; 2) there are techniques or experiments that currently exist that are capable of producing reliable results and which are generally accepted by the relevant scientific community; and 3) the "testing laboratory perform[ed] the accepted scientific techniques in analyzing the forensic samples in this particular case." People v. Castro, 545 N.Y.S.2d at 987.

AO 72A
(Rev. 8/82)

4

Apparently recognizing the uniqueness of its approach to determining the admissibility of novel scientific evidence wherein it chose to erect an additional hurdle for the proponents of DNA evidence in establishing the third prong requirement, the Castro court stated, "The compelling logic of this observation [that the Frye test is purportedly flawed because it focuses attention on the general acceptance issue and obscures the critical problems in the use of a particular technique] leads this court to conclude that a different approach is required in this complex area of DNA identification. The focus of this controversy must be shifted. It must be centered around the resolution of the third prong." Id.

Justice Sheindlin's decision in Castro, to require the trial court to determine whether the particular test performed by the testing laboratory conformed to the general protocols set down by the laboratory, even where those general protocols have passed Frye muster, was not based on a rigorous examination of the standard of admissibility applicable to novel scientific evidence as that standard had evolved in the courts of the State of New York. Rather, Justice Sheindlin made the ad hoc determination that the inherent complexity of the DNA profiling methodologies and the potentially powerful and prejudicial impact of DNA derived evidence required the trial court to extend the scope of court review beyond the parameters traditionally associated with Frye. Apparently he believed that juries could not be trusted with the sophisticated scientific issues inherent in DNA profiling.

Regardless of the virtues of this approach to the question of the admissibility of DNA evidence, it is not the approach that has been endorsed by the Sixth Circuit as the proper format by which the trial court should address questions pertaining to the admissibility of evidence derived from newly emergent technologies. It is not necessary for

this Court to again re-visit the problem of the standard of admissibility for novel scientific evidence subscribed by the Sixth Circuit. This Court has previously undertaken that task in its review of the Magistrate's exhaustive survey and distillation of Sixth Circuit cases on this point. Let it suffice, however, to note that the Sixth Circuit, while cognizant of the dangers involved in presenting evidence derived from novel scientific methodologies to a lay jury, has indicated that its version of the general acceptance standard limits pre-trial review of such questions to the first two prongs of the Castro analysis and leaves the issues contemplated in the third prong to be resolved by the jury.

Thus, neither the Eighth Circuit's holding in Two Bulls, nor the dicta and footnote reference in Commonwealth v. Robert W. Curnin, Supreme Judicial Court of Massachusetts, Case No. W-5398, 1991 Mass. Lexis 48, at p. 5, n. 7, (which case excluded DNA because of a conspicuous absence of competent government testimony on the population genetics question, and not on the issue raised herein) hold sway with this Court. The concerns of Justice Sheindlin notwithstanding, it is the position of this Court that the factual, scientific questions implicit in the Castro third prong are neither too complex for a jury to comprehend nor too "imbued with the aura of special reliability and trustworthiness" to cause fear that a jury would be seduced by the siren call of science and forget its duties as the trier of fact.

From a purely operational perspective, the issue of whether a particular test in a particular case was performed in conformity with the general protocols and procedures of the testing laboratory is no different than the issue of whether the testing laboratory made any mistakes when it performed the procedure. Both pose questions of weight for the jury's consideration and not questions of admissibility to be adjudicated by a judicial officer. This Court, in

AO 72A
(Rev. 8/82)

6

adopting the Magistrate's Report and Recommendation, rejected the position that the Sixth Circuit required the trial court to address questions of reliability when determining the admissibility of novel scientific evidence. Although more elaborate in formulation, this circuit has adopted a variation of the Frye "general acceptance" standard. That standard implicitly, and correctly, accommodates the limited ability of courts to function as surrogate scientists. It is the task of the courts in the Sixth Circuit, when faced with issues pertaining to the admissibility of novel scientific evidence, to ask and answer, in the appropriate manner, the general acceptance question. The question posed by defendants in their instant motion is not, however, a general acceptance question, but is, rather, a question that undertakes to determine whether the technique as done was done in a reliable manner. This is not, as this Court has stated repeatedly, a question for the court to answer.

The affidavit of counsel faxed January 24, 1991 asserts faulty handling of David Hartlaub's post-mortem sample, but counsel have candidly stated there is no "smoking pistol."

A recent article in the Georgetown Law Journal contains a thoughtful analysis of the Castro opinion. See Note, The Admissibility of DNA Typing: A New Methodology, 79 Geo.L.J. 313, 326 (1990) (authored by Joseph G. Petrosinelli). The note observes that the Castro third prong, to wit: "Did the testing laboratory perform the accepted scientific techniques in analyzing the forensic samples in this particular case" finds no support in previous case authority. Id. at 327. If fact, as the author noted, the holding in Castro is contrary to the holding in United States v. Stifel, 433 F.2d 431 (6th Cir. 1970). See Stifel at page 438 as follows: "Any disputes about the technique employed by the government's expert or the results of his

AO 72A
(Rev. 8/82)

7

test went to the quality of the evidence and were for consideration by the jury."

As to the Rule 403 issue, this Court on January 10, 1991, ruled that this issue would be best ruled upon during trial as the evidence comes in.

THEREFORE, for the foregoing reasons, good cause appearing, it is

ORDERED that defendants' motion to exclude DNA evidence be, and hereby is, DENIED.

_____
United States District Judge